Gaston, Judge.
 

 — We are of opinion that there is no error in the judgment below. Upon the facts stated in the case agreed, it was correctly decided that the plaintiff was
 
 not
 
 a freeman, but was the slave of the defendant. The manumission of a slave is the act of the owner. His power to perform this act, is by various statutes, restrained and regulated, but it has not been taken from him, and conferred on a judicial tribunal. In our act of 1777,
 
 (Rev. ch.
 
 109,) it is recited, that an evil and pernicious practice had prevailed of setting slaves free, which, at that critical juncture, ought to be guarded against. The evil intended to be redressed, was the too frequent and indiscreet emancipation of slaves by their owners. The remedies provided by the act, (following very closely the enactments of the colonial act of 1741, Martin’s
 
 Rev. ch.
 
 24, sec. 56,) were first, that no slave should
 
 be set free
 
 except for meritorious services, to be adjudged of, and allowed by the County Court, and license first had and obtained thereupon ; and secondly, that every slave who should “ be set free by his master or owner, otherwise than is so directed,” should be seized and sold for public purposes. The act of setting free, is regarded by this statute as the act of the master. If he performs
 
 *387
 
 it otherwise than in the mode therein prescribed, he forfeits his slave to the community, and the manumission is invalid. The license is a permisson to do the act, and this permission the Court is authorised to grantywhen it shall have adjudged that the slave has performed extraordinary services, meriting the boon which the master desires to bestow. Thé adjudication and the license do not
 
 constitute
 
 the manumission, they only legalize it, There is no subsequent statutory provision, which in the slightest degree changes the relative powers of the-master and the Court. The words of the act of 1796,
 
 (Rev. ch.
 
 453,) which have been relied on in argument, when.fairly construed, affect no alteration in this respect. It.is entitled “an act to
 
 amend, strengthen
 
 and
 
 confirm
 
 the several acts of this state, against the emancipation of slaves.” It would be somewhat éxtraordinary, if under such a title, we were to meet with enactments extending the authority of the Courts in granting emancipations, or abridging the power of masters to withhold it. This act repeats the prohibition to set a -slave free in any case, or under any pretence except for meritorious services to be adjudged of and allowed by the Court, and on license first had and obtained therefor, and then further enacts, that “ such liberation when entered of record, shall vest in the slave so as aforesaid liberated, all the right and privilege of a free-born,negro.” It cannot be held to amend the former statutes, unless it be in requiring that the liberation should be of record,- and in declaring the effect of the liberation to be an admission of the freed-man to the right only of those of his colour born out of slavery. But it has been asked if the adjudication and the license do not constitute the liberation, how is such liberation to appear of record? No mode is prescribed for recording the act, which the master may thereafter perform. We answer, in the first place, that if a subsequent act be
 
 necessary
 
 in order to evince the master’s exercise of the license granted, it may be entered of record, because the statute requires, and of course authorises, the liberation, to be recorded. But when the ordinary course of proceeding in these cases, is attended to, and which mode, we have no doubt, was that in the contemplation of the legislature,
 
 *388
 
 there needs nothing more to show the act of the master, than his petition, which is a part of the record of the proceedings of the Court. This petition usually sets forth that the petitioner is the owner of the slave; that the slave has rendered such meritorious services as to deserve the boon of freedom; that he desires
 
 then
 
 to confer it, and prays that he may be permitted so to do. The Court proceeds to examine the subject-matter of the petition; adjudges that the meritorious services have been performed, and grants the permission prayed for. These entered of record, make the liberation required by law. The master sets free, so far as he can set free, by this solemn declaration of his wish, that the shackles of bondage be forthwith removed, and the competent authority assents to this liberation. The slave is
 
 then
 
 freed by his master, under the license of the Court.
 

 The petition upon which the County Court acted in this instance, is of a very extraordinary character. It represents that the petitioner is possessed of sundry negro slaves, (among whom is the plaintiff,) whose meritorious services she desires to reward with the blessing of freedom, and prays therefore “ that she may be permitted to emancipate them,
 
 at such time as she may think proper.”
 
 It pretends not to set them free so far as the petitioner has power to liberate; it asks not that they be then freed, but rather solicits a power over them, through the instrumentality of the Court, which is denied to other citizens, of holding them in bondage or emancipating them, as
 
 her
 
 discretion or caprice shall thereafter direct. The record states, that thereupon it was ordered by the Court, that the petitioner should have the permission prayed. Either this order was null, as transcending the power delegated to the Court, or however indiscreet and inconsistent with sound policy, it availed to bestow on the petitioner the permission asked. No more appears on the record, and if the liberation must be of record, and a liberation means a setting free by the owner, then unless permission to do a future act, if the applicant should choose to perform it, be
 
 that act,
 
 the plaintiff has not been liberated.
 

 If, however, we can look beyond the record, the plain
 
 *389
 
 tiff's claim to freedom, is in no respect aided. The bonds which the case states to have been given, form no part of the act of liberation. They are required by particular statutes, which impose penalties for an omission to execute them in a prescribed time after liberation. ’ A liberation is complete without them. In the conditions of these bonds, thé plaintiff is mentioned not
 
 as freed,
 
 but (cautiously) as , , , , __ . , :
 
 '
 
 a
 
 slave,
 
 whom Elizabeth Henry is
 
 permitted
 
 to emancipate, The other facts stated, are all in opposition to the plaintiff’s claim. They show that his owner never did assent to abandon her dominion over him as owner. And it has been decided by our highest judicial-tribunal, that even the Legislature cannot emancipate a slave without the assent of his master.
 
 Allen’s Admr.
 
 v.
 
 Peden,
 
 2 Car. Law Repository, 638.
 

 Per Curiam. Judgment affirmed.